Case No. 3:06-cv-70 (TMB)                                      Bryan Barlow

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            FOR THE DISTRICT OF ALASKA AT ANCHORAGE
 3
 4   DANIEL MAHONEY,
 5        Plaintiff,
 6   vs.
 7   BRYAN BARLOW, in his individual
     Capacity, ANDY DEVEAUX, in his
 8   Individual capacity, and CITY
     OF HOMER.
 9
          Defendants.                          COPY
10
11   Case No. 3:06-cv-70 (TMB)
12
13              DEPOSITION OF BRYAN BARLOW
14                 Taken April 17, 2007
                 Commencing at 9:00 a.m.
15
16         Volume I - Pages 1 - 235, inclusive
17
18
19              Taken by the Plaintiff
                          at
20    The Office of Midnight Sun Court Reporters
              511 West 9th Avenue, Suite 1
21               Anchorage, Alaska 99501
22
23
24
25   Reporter:  Anna-Marie P. Shinn
```

P r RB
MAY 0  2007

Exhibit DD
Page 1 of
4 Pages

**Page 2**

```
 1            APPEARANCES
 2  For Plaintiff:
 3       Arthur S. Robinson
         Robinson & Associates
 4       35401 Kenai Spur Highway
         Soldotna, Alaska 99669
 5       (907) 262-9164
 6  For Defendant:  Bryan Barlow
 7       Gilman Dana S. Burke
         Office of the Attorney General
 8       1031 West Fourth Avenue, Suite 200
         Anchorage, Alaska 99501
 9       (907) 269-5190
10  For Defendant:  Andy DeVeaux and City of Homer
11       Frank S. Koziol
         Attorney at Law
12       618 Christensen Drive
         Anchorage, AK 99501
13       (907) 258-7706
14  Also present: Daniel Mahoney
                  Andy DeVeaux
15
16  Reporter:  Anna-Marie P. Shinn
17
18  BE IT KNOWN that the deposition of the above-named witness
19  was taken this date in the foregoing action before
20  Anna-Marie P. Shinn, Notary Public within and for the State
21  of Alaska.
22
23
24
25
```

**Page 3**

```
 1            PROCEEDINGS
 2            BRYAN BARLOW,
 3  called as a witness herein, being first duly sworn to
 4  state the truth, the whole truth and nothing but the truth
 5  by the Notary, testified under oath as follows:
 6            EXAMINATION
 7  BY MR. ROBINSON:
 8  Q  Good morning, Trooper Barlow.
 9  A  Good morning.
10  Q  My name is Arthur Robinson. People call me Chuck,
11  you're welcomed to do so. I represent Mr. Mahoney in this
12  matter.
13       First of all, I'd like to just ask you a few
14  preliminary questions like have you ever had your
15  deposition taken before?
16  A  Not mine. I've been in a civil deposition before, but
17  I wasn't a party.
18  Q  You weren't the deponent?
19  A  Correct.
20  Q  Well, you understand that in a deposition, even though
21  we're not in a courtroom -- we're not in front of a jury --
22  it's still -- you're under oath.
23  A  Absolutely.
24  Q  And you have to testify as if you were in a courtroom
25  testifying in front of a jury. Do you understand that?
```

**Page 4**

```
 1  A  Yes, sir.
 2  Q  If I ask a question that you don't understand, let me
 3  know.
 4  A  Okay.
 5  Q  I'll try to rephrase it so that you can understand it.
 6  But if you answer a question that I ask you, I'm going to
 7  assume that you understood what I asked you. Okay?
 8  A  Okay.
 9  Q  Before you came to the deposition today, did you
10  review any documents at all?
11  A  I reviewed my report that I generated in the criminal
12  case.
13  Q  Okay. The police report you generated in the criminal
14  case out in Homer?
15  A  Yes, sir.
16  Q  Do you have any questions before we get started?
17  A  Nothing that comes to mind right now.
18  Q  All right. What is your current address?
19  A  My current address? You're looking for a mailing?
20  Q  Well, yeah, your current mailing address.
21  A  It's P.O. Box 1642.
22  Q  1642?
23  A  Yes. Ward Cove --
24  Q  Ward Cove.
25  A  -- Alaska. And it's 999 --
```

**Page 5**

```
 1  Q  999 --
 2  A  28.
 3  Q  999 --
 4  A  28.
 5  Q  -- 28, okay. And do you have a telephone number?
 6  A  It's area code (907) 247-4498.
 7  Q  4498. All right, thanks. Are you currently married?
 8  A  I am.
 9  Q  Okay. And how long have you been married?
10  A  About four and-a-half years now.
11  Q  Do you have any children?
12  A  Two.
13  Q  What are their ages?
14  A  Seven months, 21 months.
15  Q  Ooh.
16  A  Yes, sir.
17       MR. BURKE: We were just talking about that,
18  Chuck.
19       MR. ROBINSON: The warranty is not even off of
20  those two yet.
21       THE WITNESS: Fresh out of the box.
22  BY MR. ROBINSON:
23  Q  And what are the sexes?
24  A  The 21-month-old is a boy and the younger is a girl.
25  Q  Okay. And how long have you lived in Alaska?
```

Page 210

1  A  I don't ever visit civil cases very often, but,
2  basically, more likely than not.
3  Q  Right. Or over 50 percent.
4  A  Okay.
5  Q  Okay. That's the civil standard.
6  A  Okay.
7  Q  Then you're familiar with the beyond a reasonable
8  doubt standard in criminal cases?
9  A  Yes.
10 Q  And is it your understanding that the beyond a
11 reasonable doubt standard is a higher standard -- burden
12 than preponderance of the evidence?
13 A  Absolutely.
14 Q  And is it your understanding that the probable cause
15 standard is a lower standard than preponderance of the
16 evidence?
17 A  Probable cause is a lower standard than --
18 Q  That's my question. Is that your understanding?
19 A  Yes.
20 Q  And is it your understanding that reasonable suspicion
21 is even lower than probable cause to be met?
22 A  Yes, that's my understanding.
23 Q  So in ascending order of difficulty or proof, you've
24 got reasonable suspicion, probable cause, preponderance of
25 the evidence and beyond a reasonable doubt, right?

Page 211

1  A  Correct.
2  Q  Okay. And is it your belief that reasonable suspicion
3  and probable cause and be established by evidence that does
4  not include a police officer's observations or testimony in
5  any manner?
6  A  Yes.
7  Q  Okay. Now, can an officer have reasonable suspicion
8  to believe an individual has committed a crime, but -- and
9  thereby entitle them to detain that person but not act upon
10 that belief. Is that -- can that happen?
11 A  So you're saying have reasonable suspicion that
12 somebody has committed a crime but not detain them?
13 Q  Yes.
14 A  Yes.
15 Q  Okay. That's happened to you?
16 A  It has.
17 Q  All right. And have you, at times, had a belief that
18 you've got probable cause to arrest an individual but did
19 not act upon that belief at the moment in time you
20 concluded that?
21 A  Sometimes.
22 Q  Okay.
23 A  Sometimes.
24 Q  And sometimes when an officer decides not to act upon
25 their belief that they've got reasonable suspicion to

Page 212

1  detain or not act upon their belief that they've got
2  probable cause to arrest, one of the reasons may be that
3  they want to do further investigation, correct?
4  A  That's correct.
5  Q  Okay. All right. Now, you've given an opinion, as I
6  understand it, that at the moment in time you said to Mr.
7  Mahoney "You're detained."
8     You've given your opinion -- your conclusion that
9  you had reasonable suspicion to believe he committed a
10 crime of domestic violence, right?
11 A  Yes.
12 Q  Okay. And if I understand your prior testimony, that
13 reasonable suspicion was based upon a report by his wife
14 Melodie Mahoney, that he committed several acts of violence
15 including destroying a bed and throwing rocks at her
16 vehicle, correct?
17 A  Correct.
18 Q  Would you characterize those as acts of violence?
19 A  Absolutely.
20 Q  All right. Was it conveyed to you by the dispatcher
21 that she was in fear for her physical safety?
22 A  Yes.
23 Q  She indicated that he was intoxicated, and that was
24 communicated to you, correct?
25 A  Yes.

Page 213

1  Q  And she indicated that he moved from the location of
2  where he was -- wasn't going to be scared to another
3  location, correct?
4  A  That Daniel moved from one location to --
5  Q  Yes.
6  A  -- another, yes. That would be downhill near the
7  barn.
8  Q  All right. You had no reason to believe she was not a
9  credible person at the point that you told him he was
10 detained?
11 A  Correct. At that point, I didn't have any reason not
12 to believe her.
13 Q  Okay. And, in fact, her credibility was confirmed by
14 certain verified facts: The location where you found him,
15 his identity, his dress and his intoxicated state.
16 A  True.
17 Q  Correct?
18 A  Correct.
19 Q  So you had some verification of a witness who's
20 stating that Mr. Maloney had committed --
21    MR. ROBINSON: Mahoney.
22 BY MR. KOZIOL:
23 Q  -- Mahoney had committed act of violence, correct?
24 A  Correct, yes. Consistent with what was being
25 reported.

Page 214

1  Q   Now, even though you didn't act upon it -- and I
2  understand you didn't act upon it from your testimony --
3  didn't you have probable cause at the moment you said to
4  him, "You're detained," you didn't have probable cause to
5  arrest him for a crime of domestic violence?
6  A   I didn't believe that I had probable cause to arrest
7  him for the domestic violence charge.
8  Q   And you think a reasonable person might disagree with
9  you and conclude that you had probable cause to arrest for
10 domestic violence at that point?
11 A   They may, but I didn't feel I had probable cause.
12 Q   I understand. You thought you had the lower level of
13 reasonable cause?
14 A   Correct.
15 Q   Reasonable suspicion?
16     MR. ROBINSON: To arrest or to detain?
17     MR. BURKE: I'm sorry, reasonable suspicion.
18 I should have --
19     MR. ROBINSON: To arrest? Because your
20 question was did he have probable cause --
21     MR. KOZIOL: Let me withdraw the question.
22 I'm going to withdraw the question.
23     MR. ROBINSON: All right.
24 BY MR. KOZIOL:
25 Q   Your testimony is you had reasonable suspicion to

Page 215

1  detain?
2  A   Correct.
3  Q   And I guess I have to ask you this, Trooper Barlow,
4  because I, frankly, don't understand your opinion as to why
5  you didn't think you had probable cause to arrest.
6      I've got to ask you this. You had a number of
7  verifying facts from this -- what you thought was a
8  credible witness -- to a crime of domestic violence, right?
9  A   Yes.
10 Q   Did you believe you needed some other verification,
11 with your own eyes, that you felt would give you probable
12 cause to raise it up from reasonable suspicion to probable
13 cause? You needed some other verification from your own
14 eyes to lead you to conclude you had probable cause to
15 arrest?
16 A   Yes. I believe I needed to see exactly where -- what
17 was reported in regards to dragging the bed out and driving
18 over the bed and the rocks being thrown at the truck.
19 Q   All right.
20 A   And seeing the -- the reporter -- or reported victim,
21 I felt I needed to see the -- where it happened and
22 interview the victim.
23 Q   All right. So let me give you a hypothetical. Let's
24 assume that you had seen the bed crushed before you walked
25 down and talked to Mr. Mahoney. Everything else is the

Page 216

1  same, you just saw that that bed was crushed.
2      Would you have probable cause to arrest him?
3  A   I believe so. Yes. Yes, I would.
4  Q   I'm just trying to understand where you make the
5  distinction between reasonable suspicion and probable cause
6  and -- thank you, I understand a little better. You wanted
7  a little more verification?
8  A   Yes.
9  Q   Such as seeing the bed crushed?
10 A   Seeing the bed, seeing the truck.
11 Q   Okay. I'm just asking.
12 A   Okay.
13 Q   Enough was seeing the bed, right?
14 A   Yes.
15 Q   Okay. Have -- there was questions asked of you about
16 the obligations of a citizen who believes he or she is
17 being subject to an unlawful arrest. Do you remember that
18 topic?
19 A   Yes.
20 Q   Have you ever been trained, as a police officer, to
21 understand that a citizen who's being subject to an
22 unlawful arrest has an obligation to cooperate with the
23 police officer who's unlawfully arresting them if they were
24 using reasonable force?
25 A   If they're using reasonable -- reasonable force or

Page 217

1  nondeadly force to resist -- I know that they can resist
2  the unlawful arrest.
3  Q   I'm asking a precise question.
4  A   Okay. Okay.
5  Q   Stay with my question. Okay?
6      Have you been trained that a citizen has an
7  obligation, if they're subject to an unlawful arrest, that
8  they must cooperate and not resist so long as the police
9  force is using reasonable force?
10 A   No.
11 Q   You've never been trained that?
12 A   I've been --
13 Q   Okay.
14 A   No.
15 Q   All right. Have you been trained that a citizens who
16 believe they're subject to an unlawful arrest can use force
17 to resist that unlawful arrest?
18 A   Yes.
19 Q   Who trained you in that?
20 A   This is the training -- let me see if I'm -- and maybe
21 I'm tired and I'm getting confused.
22     MR. ROBINSON: Do you need a break?
23     THE WITNESS: Well, let me --
24     MR. KOZIOL: You can take break if you want.
25     MR. BURKE: Do you want to take a break?