IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DANIEL MAHONEY<br><br>           Plaintiff,<br><br>  vs.<br><br>BRYAN BARLOW, in his individual capacity, and ANDY DEVEAUX, in his individual capacity.<br><br>           Defendants. | Case No. 3:06-cv-00070 TMB<br><br>O R D E R<br>Re: Plaintiff's Motion for Reconsideration |

## I.  MOTION PRESENTED

Plaintiff Daniel Mahoney moves for reconsideration of the Court's summary judgment order at Docket 103, which granted qualified immunity to Defendants Bryan Barlow and Andy DeVeaux for a portion of their actions during an August 7, 2004 encounter between Mahoney and the officers. That order concluded that the officers were entitled to qualified immunity from Mahoney's claims brought under 42 U.S.C. § 1983 for their actions up to and including the point when Barlow declared that Mahoney was "detained."

For the reasons set forth below, the Court DENIES the Plaintiff's Motion for Reconsideration.

## II.  BACKGROUND

Mahoney's complaint alleges that Defendants violated his federal constitutional rights through the use of excessive force, assault and battery, false arrest, and false imprisonment. The claims stem from the August 7, 2004 incident, which began when Mahoney's wife, Melodie Mahoney, called Homer Police to report that her husband was using his pick-up truck to drive over her bed outside their home, which sits approximately 11 miles outside of Homer. Melodie placed the call from inside her locked pick-up truck and told a dispatcher that her husband had thrown rocks at her and had begun beating on her pick-up truck. She then reported that her husband had walked off toward a separate part of the couple's property. Melodie also described the clothes he

was wearing, stated that her husband was drunk, and explained that he had no access to weapons other than rocks.

The dispatcher then relayed some of the details of Melodie's call to Homer Police Officer Andy DeVeaux and Alaska State Trooper Bryan Barlow. The dispatcher told the officers that Mahoney had "no known access to any weapons," although he had "throw[n] rocks at the victim who has locked herself in her vehicle." The dispatcher also relayed that Mahoney was on foot and heading toward his barn. The dispatcher did not relay Melodie's report of Mahoney's intoxication.

Barlow and DeVeaux drove to the area of the barn without stopping to speak with Melodie at the couple's home. When they arrived, Mahoney stood up from a campfire and walked toward them; he was holding a puppy and has his left arm was interlocked with his daughter, Shellie. Mahoney and the officers had a brief verbal encounter, a portion of which was captured by Barlow's tape recorder. A transcript of this recording was introduced into the record.

Shortly after the encounter began, Barlow and DeVeaux attempted to handcuff Mahoney. Mahoney resisted and the officers used physical force and pepper spray to subdue him. During the scuffle, Mahoney's left shoulder became dislocated, and he was later treated at South Peninsula Hospital. Mahoney was booked into the Homer jail on two counts of assault in the fourth degree, disorderly conduct, and resisting or interfering with an arrest. The charges were later dismissed and he was never prosecuted.

On March 31, 2006, Mahoney initiated this action. The Defendants moved separately for partial summary judgment, and the Court granted the Defendants' requests for qualified immunity on their actions up to and including the point at which Barlow decided to detain and handcuff Mahoney. But the Court denied the Defendants' requests for a ruling that Mahoney had unlawfully resisted the detention. Mahoney now seeks reconsideration of this ruling.

### III. STANDARD OF REVIEW

It is well-settled that district courts have the authority to reconsider and revise interlocutory orders, such as orders granting motions to dismiss or partial summary judgment.[1] A district court

---

[1] *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) ("[T]he interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment."); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir.

may reconsider and revise a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law.[2] However, a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice.[3]

## IV.  DISCUSSION

Mahoney asserts that in granting the Defendants' motions for summary judgment on qualified immunity, the Court erred in three respects. The Court will address each claim in turn.

### A. Mahoney's Intoxication

Mahoney's first claim is that the Court misconceived or overlooked material facts, causing it to conclude incorrectly, that the Defendants had reasonable suspicion to stop and detain Mahoney.

Mahoney correctly notes that the Court's summary judgment order erroneously stated that a police dispatcher had told the Defendants that Daniel Mahoney was intoxicated. While Melodie told the dispatcher that her husband was "drunk," this detail was never conveyed to the Defendants. Instead, the dispatcher relayed other details reported by Melodie, including the Plaintiff's name, a description of his truck, the fact that he had left the couple's home and was heading on foot toward their barn, a description of his clothing, that he had no known access to weapons, and that he had thrown rocks at his wife, who had locked herself in her vehicle.

The Court also erred by suggesting that the officers' confirmation of Mahoney's intoxicated state during their encounter with him supported a reasonable suspicion that Mahoney had been engaged in criminal activity. Because the officers were never told that Mahoney was intoxicated, the fact that he appeared to be inebriated at the scene had no bearing on their assessment of whether Melodie's allegations of criminal activity were credible

These factual discrepancies do not alter the Court's underlying conclusion or warrant reconsideration. Contrary to Mahoney's assertions, the Court's conclusion on the existence of

---

1989); Fed. R. Civ. P. 54(b).

[2] *Washington v. Garcia*, 977 F.Supp. 1067, 1068 (S.D. Cal. 1997) (Stiven, J.); *Sport-Squeeze, Inc. v. Pro-Innovative Concepts, Inc.*, 51 U.S.P.Q.2d 1764, 1771 (S.D. Cal. 1999).

[3] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).

reasonable suspicion did not hinge solely, or even primarily, on whether the officers were told before arriving at the couple's property, that the Plaintiff was intoxicated. As noted in the Court's summary judgment order, reasonable suspicion is formed by "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity."[4] In this case, the credibility of Melodie Mahoney's police report was supported by the fact that the Plaintiff was dressed as she had described and located near the couple's barn. These facts support a reasonable inference that her allegations – that the Plaintiff had run over her bed and thrown rocks at her – were credible. In addition to the issue of Melodie Mahoney's credibility, the order also relied upon Mahoney's inconsistent responses to questions from Barlow about what had happened earlier in the evening. According to a transcript of the encounter between Barlow and Mahoney, Mahoney replied: "Nothing," "I'm not here for what – what – what do you need to know, partner?" and "What's to know?"[5] Therefore, the Court concludes that its factual error as to whether the dispatchers had relayed Melodie's report of her husband's drinking to the officers was harmless, and does not alter the Court's determination on reasonable suspicion.

**B. Audio Recording**

Mahoney's second claim of error is that the Court failed to view the facts in the light most favorable to the nonmoving party. Specifically, Mahoney takes issue with the Court's conclusions about his state of mind during the encounter with Barlow and DeVeaux. Mahoney asserts that the Court misapplied the United States Supreme Court's decision in *Scott v. Harris*[6] and improperly found that the audio recording supported the officers' contentions that Mahoney was uncooperative. In support of this, Mahoney points to testimony from his deposition, at which he admitted to having drunk a pint of liquor and a beer before the officers arrived. When asked, "And what effects of intoxication were you feeling at this point when the police arrived" Mahoney replied: "I was just – I was happy."

---

[4] *U.S. v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002).

[5] Dkt. 25, Ex. C at 2.

[6] 127 S.Ct. 1769 (2007).

4

This argument is without merit. The Court acknowledges differences between the video tape at issue in *Scott* and the audio tape at issue here; the former fully captured the sight and sound of a high-speed chase that gave rise to the Plaintiff's § 1983 claims, while the latter contained only sound and an incomplete record of the officers' encounter with Mahoney. Yet these differences are immaterial.

The Court's order referenced the audio tape on the issue of whether specific factors identified by the Ninth Circuit in *Washington v. Lambert* justified the use of "especially intrusive means of effecting a stop."[7] In particular, the Court cited the audio tape as supporting the Defendants' contentions that Mahoney acted uncooperatively prior to the handcuffing.[8] But again, the Court's conclusion did not hinge solely on the audio recording. The Court also relied on a transcript of the recording, the accuracy of which the Plaintiff has never challenged. Specifically, the Court pointed to Mahoney's refusal to set down a puppy when Barlow suggested that he do so, and his responses to Barlow's questions about his interactions with Melodie. These statements support the Defendants' contentions that Mahoney was uncooperative, and thus support the Court's reliance on the first *Lambert* factor – "where the suspect is uncooperative . . . "[9] – in finding the use of handcuffing justified.

Even if the Court were to disregard the audio tape and accept Mahoney's testimony that he was "happy" while admittedly intoxicated, this would not alter the Court's conclusion. While the Court's summary judgment order could have been more precise in analyzing the application of the *Lambert* factors to the circumstances of this case, the issue is not whether Mahoney was in a happy

---

[7] 98 F.3d 1181, 1185, 1189 (9th Cir. 1996).

[8] In *Washington v. Lambert*, the Ninth Circuit set forth special circumstances that can justify the use of "especially intrusive means of effecting a stop." These circumstances include:

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur. *Id*.

[9] *Lambert*, 98 F.3d at 1189.

or agitated *frame of mind*, but whether a genuine issue of material fact exists as to whether he *acted* cooperatively or uncooperatively. That Mahoney may have felt "happy" from the effects of the drinking does not alter the undisputed evidence that he refused Barlow's direct request to set down the puppy, and also refused to answer questions about what had happened between Mahoney and his wife. As a result, the Court did not err in applying the summary judgment standard to Mahoney's state of mind, and indeed properly applied the first *Lambert* factor based on Mahoney's lack of cooperation during his brief encounter with the Defendants.

### C. The Court's Application of the *Lambert* Factors

Mahoney's third claim of error is that the Court misapplied the *Lambert* factors to the circumstances of this case. In particular, he challenges the Court's reliance on the first and third factors, arguing that the *Lambert* court intended to justify the use of "especially intrusive means" – such as the use of handcuffing and pepper spray – only in cases in which the officers' safety was threatened.[10]

On this issue, Mahoney has not asserted that the Court committed clear error, and his arguments essentially repeat the arguments he made in opposing the Defendants' motion for summary judgment. He cites no legal authority for the proposition that the first and third *Lambert* factors apply only to situations in which a police officer's safety is threatened. Nevertheless, the Court has independently reviewed the facts on the record and concludes, again, that under *Lambert* the Defendants were justified in using intrusive means to effect their investigative stop of Mahoney.

### V.  CONCLUSION

The factual errors contained in the Court's order at Docket 103 were harmless and do not provide a basis to alter the Court's earlier conclusion on qualified immunity. Because of this, the Plaintiff's Motion for Reconsideration at Docket 106 is DENIED.

---

[10] Mahoney does not directly dispute the Court's application of the third Lambert factor in this case. The third factor is whether "the stop closely follows a violent crime." The Court's summary judgment order stated that the Defendants "could reasonably have interpreted" information relayed by the Homer police dispatcher as a report of domestic violence.

Dated at Anchorage, Alaska, this 23rd day of June 2008.

/s/ Timothy Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE